DANA W. SCOTT & another vs. BOARD OF APPEAL OF
WELLESLEY & others.

Norfolk.   March 6, 1969. — June 5, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

Zoning, Yard; Swimming pool; Structure; Board of Appeals: decision.
   Structure.  Swimming Pool.

A private swimming pool which, although mostly below ground level,
   rose above it at points and had a substantial concrete diving board
   base, a diving board in place, and a metal pool-side ladder, and was
   surrounded by a solid wooden fence about five feet high, was a "struc-
   ture" within provisions of the town's zoning by-law requiring a "front
   yard" of a specified "depth" for every "building or structure" and
   defining a "front yard" as "an open space . . . between the extreme
   front line of the building and the street line . . . and [with certain ex-
   ceptions] unoccupied above ground level," and where the pool was
   located nearer the street line than the required "depth" it was in vio-
   lation of the by-law. [162]
Failure of a town's zoning board of appeal to render a decision on an ap-
   peal within ninety days after the filing of the appeal as required by
   both G. L. c. 40A, § 18, and the zoning by-law was not a jurisdictional
   defect invalidating the decision when later made. [162]

BILL IN EQUITY filed in the Superior Court on January 13,
1967, by way of appeal from a decision by the zoning board
of appeal of Wellesley.

The suit was heard by Taveira, J.

Albert Auburn for the plaintiffs.

Henry D. White for James H. Odell & another (Harry E.
Warren, for the Board of Appeal of Wellesley, with him).

WHITTEMORE, J.   The Wellesley board of appeal and the
judge in the Superior Court ruled that a permit for a swim-
ming pool at 69 Forest Street, Wellesley, in the side and
front yards of the residence of the plaintiffs, Dana W.
Scott and Lois L. Scott, was issued in violation of the zon-
ing by-law.   He ruled that under the by-law the pool is a
"structure" requiring front and side yards.

The swimming pool as constructed in accordance with the
permit is at the side of the Scott house and between it and

the property of the defendants James H. and Mary T. Odell at 63 Forest Street. Its easterly or front end wall is 25.5 feet from the Forest Street line. Its northerly side wall is 18.6 feet from the Odell property line. Its southerly side wall is just over twenty feet from the northerly wall of the house. Photographs in evidence show it surrounded by a solid wooden fence about five feet high that extends from the northeast corner of the main part of the house around the pool to the northwest corner of the house. The fence at its nearest point appears to be about twelve feet from the street line and only a very few feet from the side lot line. It encloses not only the pool but also the covered side porch of the house. The photographs also show what appears to be a concrete rim of the pool, perhaps ten inches wide, rising at points about six inches above the ground; also a substantial concrete diving board base with a diving board in place and a metal pool-side ladder. The northerly and easterly walls of the pool were constructed to rise several feet above the grade of the lot as existing before the construction. Fill was placed against these walls to create a slope or embankment from the pool edge to the former lower lot grade.

Although the point has not been argued, we assume that the swimming pool could be found to be a permitted accessory use. Section II permits accessory uses in single residence districts (and, by reference in other sections, in less restricted residence districts): "7. Such accessory uses as are customary in connection with . . . [the particular uses specified] and are incidental thereto, including a private garage and a private stable." There was evidence of the construction of swimming pools on other lots in Wellesley.[1] See *Bloomfield* v. *Parizot*, 88 N. J. Super. 181, 183–184 (above ground pool although a structure under the permit requirements of the building code was held an accessory zoning use, that is, one customarily incident to the principal use).

[1] Several exhibits show pools in backyards.

Section XIX of the zoning by-law defines a front yard as an "open space, on the same lot with the building, between the extreme front line of the building and the street line . . . and unoccupied above ground level except by steps, projecting eaves, uncovered or covered entrance porches on the first floor which do not exceed a total area of fifty (50) square feet."

The section defines a side yard as an "open space on the same lot with the building, between the building and the side line of the lot, extending the full width or depth of the building and unoccupied above the ground level except by uncovered steps and projecting eaves."

The section provides that there "shall be provided for every building or structure hereafter erected or placed upon any lot, a front yard at least thirty (30) feet in depth and at least sixty (60) feet in width for the entire depth of the front yard . . . . There shall be provided a side yard not less than twenty feet in width on each side of every building or structure (other than an accessory building not over one and one-half stories in height and not used for habitation) hereafter erected or placed on any lot in . . . [stated districts]." The section also provides that no yard or other open place "shall be so altered as to reduce the size of the then existing yard unless the resulting yard complies with the requirements of this section, except by taking by eminent domain or by a conveyance for a public purpose."

Anything "constructed or built" (dictionary definition) is a structure but whether a particular thing constructed is within the meaning of the word as used in a statute, regulation, or contract depends upon the context. See *Nash* v. *Commonwealth*, 174 Mass. 335, 336; *Jenney* v. *Hynes*, 285 Mass. 332, 335–336; *Manchester* v. *Leahy*, 336 Mass. 158, 160; *Williams* v. *Inspector of Bldgs. of Belmont*, 341 Mass. 188, 190–191 (tennis court not a structure under particular provisions of the by-law stating the purposes for which a "building or structure" might be used in a residence district); *Joseph E. Bennett Co. Inc.* v. *Fireman's Fund Ins. Co.* 344 Mass. 99, 104.

We think that the pool is to be deemed a structure for purposes of the yard or setback provisions of the Wellesley by-law. It is a large permanent installation constructed of wood, steel, stone and earth, with a plastic liner. Although mostly below ground level there is, because of it, a material occupation of a substantial area above ground.[2] We think it is within the strict exclusion of the front and side yard provisions.

The intention of the yard or setback provisions of the Wellesley by-law is by no means clear. One point is plain however; as the pool is a structure there is no basis for contending that there may be less than thirty feet between it and the street line.

The by-law could, we think, be construed to require that there be twenty feet between the pool and the side lot line. But the briefs have not dealt with the issues whether as an accessory use the pool, placed between the side of the house and the lot line, is to be deemed within the intent of the provision that side yards are not required for an "accessory building" and whether the twenty feet between the house and the pool could be regarded as the required side yard of the house. If in the absence of clarifying amendments further construction is required, a proceeding under G. L. c. 231A will be available.

The plaintiffs constructed their pool with notice of the appeal taken by the Odells. The failure of the board to enter a decision within ninety days as specified in the by-law was not a jurisdictional defect. *Cullen* v. *Building Inspector of No. Attleborough*, 353 Mass. 671, 679–680.

The final decree ruling that the decision of the board of appeal revoking the permit for the swimming pool was not in excess of its authority and should not be annulled is affirmed.

*So ordered.*

---

[2] The parties have handed us with the exhibits the Wellesley board of health regulations. The pamphlet was marked for identification but not as an exhibit. We note that it requires a suitable fence about a swimming pool and a gate which is to be locked when the facilities are not in use.