IRENE A. CHWALISZEWSKI *vs.* BOARD OF APPEALS OF
LYNNFIELD & others.[1]

No. 89-P-764.

Suffolk. May 14, 1990. - September 19, 1990.

Present: PERRETTA, KASS, & JACOBS, JJ.

*Zoning*, Basketball court. *Municipal Corporations*, By-laws and ordi-
nances. *Words*, "Structure."

A provision in the Lynnfield zoning by-law imposing set back and side
   yard line requirements on buildings, swimming pools, tennis courts and
   "other structure[s]," was applicable to three dimensional permanent
   improvements made with building materials, with the result that a fifty
   foot by forty foot hardtop basketball court with three backboards and
   hoops mounted on tall stationary posts was a structure subject to regu-
   lation under the by-law. [249-251]

CIVIL ACTION commenced in the Land Court Department
on February 20, 1987.

The case was heard by *Robert V. Cauchon*, J.

*David Berman* for the plaintiff.

*S. Peter Gorshel*, Town Counsel, for the Board of Appeals
of Lynnfield.

PERRETTA, J. By this appeal, we are asked to decide
whether, as matter of law, a basketball court is a "structure"
within the meaning of the Lynnfield zoning by-law. Section
4(h) of the by-law imposes set back and side yard line re-
quirements on "building[s], swimming pool[s], tennis
court(s) or other structure[s]." The board of appeals of
Lynnfield held that a building permit was not required for
the construction of the court. A judge of the Land Court af-
firmed the board's decision. Because no excavation or enclo-
sure was necessary for a basketball court, he determined that

[1]Christopher J. Ford and Kathryn A. Ford.

it was "more akin to a patio or a driveway" and outside the scope of the by-law. We conclude that, as used in § 4(h), the word "structure" includes three dimensional permanent improvements made with building materials. We reverse the judgment.

1. *The Basketball Court.*

We relate the facts as they appear from a photograph, diagrams, and the judge's memorandum of decision which, in turn, is based in large measure upon the parties' statement of agreed facts. The plaintiff's backyard abuts that of Christopher and Kathryn Ford. In 1986, the Fords built a basketball court in their backyard after being told by the building inspector that no permit was required.

It appears from the photograph that the court's hardtop surface is most likely macadam and is so even with the yard that it can be described accurately as being ground level. The court is fifty feet in length and forty feet in width. Its length is roughly parallel to the plaintiff's lot line, which is about twenty feet from the court at the farthest point and seventeen feet at the closest. There are tall shade trees on the Fords' and abutters' property which provide the court with shade. That fact may well have played a role in the site selection for the court.

A tall stationary post is situated at each end of the court at its exact center-width, i.e., twenty feet. There is also a third post along one side of the court. Although the diagrams do not reveal the exact distance between the plaintiff's house and her property line, the photograph explains the controversy. We are able to see that, from the portion of her house depicted, she has a seat, high above court-side, from at least one of her windows.

An acrylic backboard, rimmed in orange, with an orange hoop and white netting, is anchored to each of the three posts. The post and hoops are of such height to challenge agile adults engaged in the intended sport.

We think it obvious from our description that we are not here concerned with the familiar suburban sight of a backboard and hoop anchored above a garage door.

2. *Section 4(h)*.

All that we have before us in respect to the Lynnfield zoning by-law is so much of § 4(h) as is set out in the judge's memorandum. If there are other sections of the by-law relevant to this dispute, we have not been provided with them, and the case is decided on the narrow basis presented. We do not concern ourselves with the question whether a basketball court is a customary and incidental use of the residence.

Section 4(h) reads, in pertinent part: "In all districts, except as herein provided, no building, swimming pool, tennis court(s) *or other structure* shall be constructed or placed nearer to . . . the side lines of its lot than the 'Required Side Yard Width,' or nearer to the rear line of its lot than the 'Required Rear Yard Depth,' specified in the following table for the district in which said lot is located" (emphasis supplied). Because there is no dispute that the basketball court does not meet the required rear yard depth requirement of twenty feet,[2] the only question is whether, as matter of law, the words "other structure" encompass the court. See *Framingham Clinic, Inc.* v. *Zoning Board of Appeals of Framingham*, 382 Mass. 283, 290 (1981), citing *Kurz* v. *Board of Appeals of N. Reading*, 341 Mass. 110, 112 (1960).

In asking that the basketball court be razed or moved, the plaintiff points to the regulation of tennis courts, which she regards as equally intrusive but less offensive. Her point of view appears to be based largely upon her assessment of the activities conducted on the different courts, that is, a maximum of four, rather than ten, people engaged in a less noisy and combative game. The board ignores the similarities between the courts and argues that tennis courts were expressly included in § 4(h) because the drafters feared that such courts would be excluded from regulation unless specified. See, e.g., *Williams* v. *Inspector of Bldgs. of Belmont*, 341 Mass. 188, 190-191 (1960), holding that unless otherwise defined by a zoning regulation, a tennis court is not a structure.

---

[2]Nor does the basketball court on one side conform to the required side yard width of the by-law. That abutter, however, lodged no protest.

As used in § 4(h), however, the word "structure" does not stand alone. It is used in the context of a "building," "swimming pool" and "tennis court," all of which have sufficient commonality with a basketball court to bring the latter within the ambit of § 4(h). "Traditional methods of statutory construction reinforce our conclusion. 'A general term in a statute or ordinance takes meaning from the setting in which it is employed. The literal meaning of a general term in an enactment must be limited so as not to include matters that, although within the letter of the enactment, do not fairly come within its spirit and intent.' *Kenney* v. *Building Commr. of Melrose*, 315 Mass. 291, 295 (1943). Accord, *Commonwealth* v. *Baker*, 368 Mass. 58, 67-71 (1975); *Koller* v. *Duggan*, 346 Mass. 270, 273 (1963). 'The problem is to determine what particulars that were not mentioned are sufficiently like those that were, in ways that are germane to the subject and purpose of the act, to be made subject to the act's provisions by force of the general reference.' 2A C. Sands, Sutherland Statutory Construction § 47.18, at 110 (4th ed. 1973)." *Haas* v. *Breton*, 377 Mass. 591, 595 (1979). See also *Framingham Clinic, Inc.* v. *Board of Appeals of Framingham*, 382 Mass. 283, 290 (1981).

Applying these principles, the judge concluded that a basketball court could not reasonably be considered a structure within the intended meaning of § 4(h) because of the following distinctions: "[W]hereas buildings consist of sides and a roof and tennis courts generally require enclosures of a certain height to serve as backstops, a basketball court may be used for its intended purposes in the absence of any similar type of framing or enclosure. In such respect, a basketball court is then more akin to a patio or a driveway, neither of which is subject to []§ 4(h) . . . . [A] basketball court is readily distinguishable from a swimming pool in that little to no construction or excavation is necessary for its installation, nor is any enclosure, such as a fence, a common feature."

Those distinctions relied upon by the judge are not common to each of the facilities mentioned in § 4(h). For example: "The work in making a tennis court is like that involved

in making a driveway or road. The wire fence or ball guard and the net posts are incidents of the tennis court and are no more structures within the zoning law than is the court." *Williams* v. *Inspector of Bldgs. of Belmont*, 341 Mass. at 191. We think no less can be said of the basketball court and its incidents, the posts and backboards. Although a building generally requires excavation, what of a shed used for storage of lawnmowers, snowblowers, and other tools? As for larger buildings which require excavation, neither a tennis nor a basketball court entails excavation. Thus, stripped of their incidents, a tennis court and a basketball court are similar to each other and both are different from buildings.

Further, as construed by the judge, § 4(h) would not prohibit the placement on property of an above-ground swimming pool anywhere that the owner might chose. Should, however, the owner prefer a pool below ground level, § 4(h) would control the site. See, e.g., *Scott* v. *Board of Appeal of Wellesley*, 356 Mass. 159, 162 (1969).

In our view, the distinctions relied upon by the judge are more anomalous than persuasive. Bearing in mind that, as noted by the judge, a fence is a "common feature" of a below ground level swimming pool (see G. L. c. 231, § 85Q, and cf. *Scott* v. *Board of Appeal of Wellesley*, 356 Mass. at 162 n.2), we see that the feature most generally common to buildings, swimming pools, and tennis courts is that they are three dimensional (i.e., length, width, and height) permanent improvements made with building materials. This interpretation of the word "structure" is consistent with the common meaning of that word and the intent of § 4(h). Moreover, by concluding that § 4(h) speaks only to these types of structures, we exclude from the scope of the regulation those structures which do not fairly come within its reach, e.g., driveways, patios, badminton and volleyball nets (without courts), backboards above garage doors, flagpoles, etc. See *Haas* v. *Breton*, 377 Mass. at 595.

3. *Conclusion.*

It follows from what we have said that the judgment is reversed. The matter is remanded to the Land Court, where

a new judgment is to enter reversing the decision of the board of appeals of Lynnfield and remanding the matter to that board for further proceedings.

*So ordered.*