LAURA M. WEBSTER & others *vs.* BOARD OF APPEALS OF READING & another.

Middlesex. February 2, 1965. — April 7, 1965.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Zoning,* Special permit.

A general provision in a town's zoning by-law prohibiting nursing homes and similar activities except by special permit from the board of appeals was designed merely to impose an additional requirement for such activities in zoning districts where they were otherwise allowed, and not to authorize them by permit in districts where they were otherwise forbidden; and such provision did not authorize the board of appeals to grant a special permit for a nursing home in a residential district where the by-law specifically allowed only single family dwellings and prohibited "rendering of services" and "all business . . . enterprises."

BILL IN EQUITY filed in the Superior Court on February 24, 1964.

The suit was heard by *Kalus, J.*

*Philip M. Cronin* for the plaintiffs.

*J. Warren Killam, Jr.,* Town Counsel, for the Board of Appeals of Reading.

*Richard D. Gerould* for Samuel Meline.

REARDON, J.  On January 28, 1964, the board of appeals (board) of the town of Reading (town) granted to the defendant Samuel Meline (Meline), subject to certain conditions, a special permit for the construction of a nursing home in a "Residence 'A–1' district." The plaintiffs, owners of residential property near the locus, objected to the proposed construction and appealed to the Superior Court under G. L. c. 40A, § 21.  From a final decree upholding the decision of the board the plaintiffs have appealed.  The trial judge filed a report of material facts.

The zoning by-laws divide the town into nine districts, four of which are residential.  Part 1, § IV, provides that in Residence "A" districts "the erection or use of any principal building except as a single family detached house is specifically prohibited" and that "[i]n all residence districts the erection of any building . . . for the rendering of services is specifically prohibited." Also prohibited are "all business and industrial enterprises." Part 1, § III, paragraph 5, provides that "[h]ospitals, convalescent or rest homes, nursing homes, boarding homes for the aged, and private kindergartens are prohibited unless a permit therefor is granted by the Board of Appeal after a public hearing." Paragraph 7 of that section forbids permission for any use which is offensive because of a variety of objectionable features or which is a hazard "on account of fire or explosion or any other cause."

On January 2, 1964, Meline filed with the board an "Application for Variation of Zoning — Building Laws" to construct and operate a modern and attractive nursing home on two lots on John Street in Reading.  This application was treated by all parties as seeking a special permit for

an exception under G. L. c. 40A, §§ 4, 15, rather than a variance.[1]

The judge ruled that paragraph 5 is valid as a provision designed to "implement the exercise of the power given to the board by virtue of C. 40A, § 4, to grant an exception and to issue a special permit concerning otherwise *proscribed* uses of land" and that the action of the board "in approving the Meline petition was in compliance with all of the applicable procedural provisions required" by the zoning statute and the zoning by-laws of the town.

The issue presented is whether, pursuant to G. L. c. 40A, § 4, the by-laws (§ III, paragraph 5) empower the board to grant permits for the uses therein specified in any district, as the board and Meline contend, or whether the paragraph is rather directed to the additional requirement of a permit for such uses in districts where they are otherwise permissible.

Section III of the by-laws is largely prohibitory in character and does not expand the powers of the board. We cannot believe that it was ever intended that "commercial ball parks, commercial amusement parks and other enterprises of a similar character," prohibited by paragraph 4 of § III unless approved by the board of selectmen, might be located in Residence "A" districts on the granting of permits on petitions similar to the one filed here relating to a nursing home. Sound principles of statutory construction dictate that interpretation of provisions having identical language be uniform. See *Sheldon* v. *Boston & Albany R.R.* 172 Mass. 180, 182; *Randall's Case,* 331 Mass. 383, 386.

We agree with the plaintiffs that this matter is similar to *Pratt* v. *Building Inspector of Gloucester,* 330 Mass. 344,

---

[1] General Laws c. 40A, § 4, states that a "zoning . . . by-law may provide that exceptions may be allowed to the regulations and restrictions contained therein, which shall be applicable to all of the districts of a particular class and of a character set forth in such . . . by-law. Such exceptions shall be in harmony with the general purpose and intent of the . . . by-law and may be subject to general or specific rules therein contained." Under § 15 the board is authorized "to hear and decide applications for special permits for exceptions."

345, where it was held that a city ordinance requiring council approval for various uses "was designed to provide the additional safeguard of council approval for certain undesirable uses in districts where they were otherwise permitted and not to break down the plan of the ordinance by allowing the council to introduce such uses into otherwise forbidden districts."

In the light of the foregoing we need not discuss whether, if the use were permissible, the by-laws would be held to contain adequate standards to guide the board. See *Burnham* v. *Board of Appeals of Gloucester*, 333 Mass. 114, 118.

*Decree reversed.*