BUILDING INSPECTOR OF MANSFIELD *vs.* CHRISTOPHER
CURVIN.

Bristol. February 10, 1986. — June 20, 1986.

Present: GREANEY, C.J., CUTTER, & WARNER, JJ.

*Piggery. Zoning,* Agriculture. *Words,* "Agriculture."

The provision of a town's zoning by-law prohibiting the maintenance of a
   piggery was in conflict with G. L. c. 40A, § 3, and therefore invalid.
   [402-405] CUTTER, J., concurring.

CIVIL ACTION commenced in the Superior Court Department
on March 26, 1984.

The case was heard by *Chris Byron,* J.

*John P. Dwyer,* Town Counsel, for the plaintiff.

*Mitchell J. Sikora, Jr.,* for Department of Food and Agriculture, amicus curiae, submitted a brief.

WARNER, J. The sole issue in this case is whether a section
of the zoning by-law of the town of Mansfield prohibiting the
maintenance of a piggery conflicts with The Zoning Act (Act),
G. L. c. 40A, § 3.

The case was presented to a Superior Court judge on a
statement of agreed facts, from which we outline the back-
ground relevant to this appeal. The defendant owns about sev-
enteen acres of land, all in an agricultural zone, in Mansfield;
he purchased the property in 1980. The defendant operates a
piggery on the land, and at the time of the hearing there were
about sixty pigs there. After the defendant failed to heed notices
to desist, the plaintiff building inspector brought this action
seeking injunctive and monetary relief. In a memorandum of
decision, the judge concluded that the zoning by-law was in
conflict with the Act, and the plaintiff appeals[1] from a judgment
dismissing the complaint.

---

[1] The defendant did not file a brief in this court. We are grateful for the
amicus curiae brief of the Department of Food and Agriculture, which
argues in support of the judgment.

Section III-E-18 of the Mansfield zoning by-law, adopted in 1978, prohibits the maintenance of a piggery anywhere in the town.[2] General Laws c. 40A, § 3, as appearing in St. 1975, c. 808, § 3,[3] provides in pertinent part: "[N]or shall any such ordinance or by-law *prohibit,* unreasonably regulate or require a special permit for the use of land for *the primary purpose of agriculture,* horticulture or floriculture, nor shall they prohibit or unreasonably regulate the expansion or reconstruction of existing structures thereon for the primary purpose of agriculture, horticulture or floriculture, except that all such activities may be limited to parcels of more than five acres in areas not zoned for agriculture, horticulture or floriculture" (emphasis supplied).

The only question before us on appeal is whether the operation of a piggery constitutes "agriculture" within the meaning of § 3 of the Act. If it does, the zoning by-law conflicts with the Act and is invalid. See *Lanner* v. *Board of Appeal of Tewksbury,* 348 Mass. 220, 228 (1964); *Mullin* v. *Planning Bd. of Brewster,* 17 Mass. App. Ct. 139, 143 (1983). There is no definition of "agriculture" in the Act. "When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose. We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions" (citations omitted). *Commonwealth* v. *Zone Book, Inc.,* 372 Mass. 366, 369 (1977). *Glennon* v. *School Comm. of Boston,* 375 Mass. 757, 763 (1978). See G. L. c. 4, § 6, Third; *Casey* v. *Massachusetts Elec. Co.,* 392 Mass. 876, 880 (1984).

The obvious purpose of the Act in the respect with which we are now concerned is to promote agricultural use within all zoning districts in a municipality. Such use may not be pro-

---

[2] "No person, firm or corporation shall keep a piggery within the Town of Mansfield. The keeping of four or more pigs at any one time shall constitute a piggery."

[3] Subsequent amendments to § 3 by St. 1977, c. 860; St. 1982, c. 40; St. 1983, c. 91; and St. 1985, c. 637, § 2, are not relevant.

hibited or unduly restricted even in an area not specifically zoned for the purpose as long as the parcel being used is one of more than five acres.

We look then first to lexical definitions. "Agriculture" is defined as "the science or art of cultivating the soil, harvesting crops, and raising livestock[,] . . . the science or art of the production of plants and animals useful to man and in varying degrees the preparation of these products for man's use and their disposal (as by marketing)." Webster's Third New Int'l. Dictionary 44 (1971). The word "livestock" is defined as "animals of any kind kept or raised for use or pleasure," *id.* at 1324, and "[d]omestic animals, such as cattle, horses, sheep, hogs, or goats, raised for home use or for profits." American Heritage Dictionary 764 (1976).

We look also to the use and definition of the word "agriculture" in other legislation because "[s]ound principles of statutory construction dictate that interpretation of provisions having identical language be uniform." *Webster* v. *Board of Appeals of Reading,* 349 Mass. 17, 19 (1965). See *Commonwealth* v. *Baker,* 368 Mass. 58, 69 (1975); 2A Sands, Sutherland Statutory Construction § 51.02 (4th ed. 1984). General Laws c. 128, governing in general the conduct of agriculture, in § 1A, as amended by St. 1960, c. 181, defines agriculture (as well as "farming") to include "the raising of livestock, the keeping and raising of poultry, swine, cattle and other domesticated animals used for food purposes."[4] In addition, G. L. c. 111, which addresses public health concerns, in § 1, as amended through St. 1966, c. 217, defines agriculture and farming to "include farming in all its branches and . . . the raising of livestock, the keeping and raising of poultry, swine, cattle and other domesticated animals used for food purposes, bees, fur bearing animals. . . ." Further, G. L. c. 61A, which deals with the assessment for real estate tax purposes of agricultural and horticultural land, provides in § 1, inserted by St. 1973,

---

[4] General Laws c. 20, establishing the Department of Food and Agriculture and defining its powers and duties, provides in § 1, inserted by St. 1974, c. 654, § 2, that "Agriculture" and "Farming" are to have the meanings "as defined in Section one A of chapter one hundred and twenty-eight."

c. 1118, § 1: "Land shall be deemed to be in agricultural use when primarily and directly used in raising animals, including, but not limited to, dairy cattle, beef cattle, poultry, sheep, swine, horses, ponies, mules, goats, bees and fur-bearing animals, for the purpose of selling such animals or a product derived from such animals in the regular course of business; or when primarily and directly used in a related manner which is incidental thereto and represents a customary and necessary use in raising such animals and preparing them or the products derived therefrom for market."[5]

We conclude, as did the Superior Court judge, giving the word agriculture in § 3 of the Act its plain and ordinary meaning and its consistent and well-established (when § 1 of the Act was enacted in 1975) definition in other statutory contexts, that the Mansfield zoning by-law prohibiting the maintenance of piggeries is in conflict with the Act and is, therefore, invalid.

The plaintiff's reliance in this appeal on cases involving private or public actions for nuisance and suits to enforce regulations of municipal boards of health enacted under statutory authority, all of which sought successfully to abate the operation of a piggery, is misplaced. See, e.g., *Commonwealth* v. *Perry,* 139 Mass. 198 (1885, criminal prosecution for nuisance); *Cochis* v. *Board of Health of Canton,* 332 Mass. 721 (1955, board of health regulation prohibiting piggeries); *Board of Health of Woburn* v. *Sousa,* 338 Mass. 547 (1959, board of health regulation requiring permit for the keeping of swine); *Board of Health of Franklin* v. *Hass,* 342 Mass. 421 (1961, board of health regulation forbidding piggeries); *Pendoley* v. *Ferreira,* 345 Mass. 309 (1963, private nuisance action). No question of nuisance or of any violation of any regulation of the board of health was presented to the Superior Court judge, nor is any such question argued to us.[6]

---

[5] General Laws c. 150A (the Labor Relations Act) § 5A, inserted by St. 1970, c. 882, § 2, defines agriculture to include "horticulture, floriculture and any other commercial enterprise involving the production of food or fiber."

[6] The complaint alleged that a board of health regulation banned piggeries in Mansfield. The statement of agreed facts adopts certain of the allegations

The plaintiff's reliance on *Lincoln* v. *Murphy,* 314 Mass. 16 (1943), is to no avail for the reasons that (1) that case involved the construction of the word "farm" in a town's zoning by-law, (2) the case was decided before the amendments by St. 1960, c. 181, of G. L. c. 128, § 1A, and by St. 1966, c. 217, of G. L. c. 111, § 1, the addition of G. L. c. 61A, by St. 1973, c. 1118, § 1, all of which expressly included within the definition of agriculture the raising of swine, and the amendment of G. L. c. 40A, § 3, by St. 1975, c. 808, § 3, proscribing the prohibition of agricultural uses,[7] and (3) the court recognized that "[a]n exemption for agricultural purposes is much broader than one for 'farms, greenhouses, nurseries and truck gardens.'" *Id.* at 21.

*Judgment affirmed.*

CUTTER, J. (concurring). I concur with the opinion, because G. L. c. 40A, § 3, as appearing in St. 1975, c. 808, § 3, expressly provides that local zoning ordinances and by-laws

---

in the complaint (including that as to the existence of the zoning by-law provision in question) but makes no reference to any board of health regulation. The board of health was not a party to the action. The judge expressly found that the only issue presented to him was the validity of the zoning by-law. There is no quarrel with that finding on appeal.

General Laws c. 111, § 143, as amended through St. 1985, c. 613, §§ 2A & 3, authorizes municipal boards of health to assign locations for activities "which may result in a nuisance or be harmful to the inhabitants, . . . or may be attended by noisome and injurious odors." That power is "subject to the provisions of chapter 40A," which we now construe, and applies to piggeries. ("Notwithstanding any provision in section one hundred and twenty-five A of this chapter, this section shall apply to the operations of piggeries.") See also G. L. c. 111, § 31, as amended by St. 1985, c. 70. The Commonwealth, through the Department of Food and Agriculture, also has regulatory authority with respect to the keeping of pigs, see, e.g., G. L. c. 129, §§ 2, 16 & 19, and has exercised it. See, e.g., 330 Code Mass. Regs. 4.07, 4.08 & 11.01 (1978). The reconciliation of the regulatory powers of the department and of municipalities, if any is needed, is for another day.

[7] "The Legislature must be presumed to have meant what the words plainly say, and it also must be presumed that the Legislature knew pre-existing law and the decisions of [the Supreme Judicial] [C]ourt." *Condon* v. *Haitsma,* 325 Mass. 371, 373 (1950).

may not "prohibit, unreasonably regulate or require a special permit for the primary purpose of agriculture" even in areas not zoned for agricultural uses provided a parcel devoted to agricultural uses in such areas is greater than five acres. The Massachusetts decisions cited in the main opinion have treated piggeries in the past as inherently noxious and thus a nuisance to those exposed to piggery odors. One general purpose of zoning legislation has been to confine noxious or harmful uses to specified areas or to areas large enough to prevent the harm from adversely spreading to and affecting neighboring land. A piggery which became noisome could easily impede residential development in a town like Mansfield. Thus, I am less certain than the majority (see note 7, *supra*) that, in adopting the 1975 revision of c. 40A, the Legislature had in mind the Massachusetts decisions just mentioned, or that G. L. c. 61A, § 1; c. 111, § 1; and c. 128, § 1A, had been amended or enacted, respectively, in 1973, 1966, and 1960 to include in the term "agriculture" the keeping of swine, although that term perhaps is thought of as referring principally to the raising of crops. It may be that the legislative intention was to confine the regulation of piggeries to the prevention and prohibition of nuisances by local boards of health or other public authorities or by private suit and the common law of nuisance, rather than by local zoning legislation. See G. L. c. 111 (see, e.g., §§ 125A, and 143, each as amended or affected by St. 1985, c. 613, §§ 2, 2A, & 3). The relationship among the relevant provisions of chapters 40A, 111, and 128, is not wholly obvious or clear. If the present decision under c. 40A does not carry out the legislative purpose, legislative clarification well may be appropriate.