MITCHELL STEEGE & another[1] *vs.* BOARD OF APPEALS OF STOW & others.[2] No. 87-1259. September 9, 1988. *Stable. Zoning,* Agriculture. *Words,* "Agriculture."

This is an appeal from a ruling of the Land Court that the operation of a boarding stable for horses and a riding academy is an agricultural use protected by G. L. c. 40A, § 3.[3] The facts are not in dispute.

Mitchell and Katherine Steege are the owners of property in Stow which contains in excess of five acres and is located in a residential zone. For many years prior to August, 1984, when the Steeges first acquired the land, the locus was part of a twenty-five acre farm which had been used as a home for ill and retired horses. From the time they acquired the property, the Steeges have used the premises for the raising, training, and boarding of horses; for giving riding lessons; and for the riding use of owners of the boarded horses. The premises have been licensed by the Commonwealth for the operation of a riding school. On August 2, 1984, the building inspector ordered the Steeges to "cease and desist immediately the riding school operation . . . ." The order stated that its enforcement would be "extended" if the Steeges filed for a special permit with the board of appeals (board). On September 13, 1984, the Steeges submitted an application for a special permit, under protest. They claimed that the operation of a riding school on their property was an agricultural use and, therefore, exempt from the proscriptions of Stow's zoning by-law. See G. L. c. 40A, § 3. After a hearing the board denied the Steeges' application for a special permit.

The Steeges then filed a complaint in the Land Court against the board, the building inspector, and the town seeking a declaration that their use of their land was agricultural and exempt from local regulation.

After the trial in the Land Court, the judge filed a memorandum of decision that contained her findings and rulings. She ruled that "the uses made by the plaintiffs of their land . . . are so interrelated that they comprise agricultural use as defined in G. L. c. 61A, §§ 1 and 3, and G. L. c. 128,

---

[1] Katherine Steege.

[2] The building inspector of Stow and the town of Stow.

[3] As an alternative ground for ordering the entry of judgment for the plaintiffs, the judge ruled that the special permit had been constructively granted because the board of appeals failed to take final action within the time period mandated by G. L. c. 40A, § 9. The correctness of that ruling has been made an issue on appeal by the defendants. Because of our decision in favor of the plaintiffs in regard to the "agricultural use" of their property, we do not reach that issue.

§ 1, and are therefore exempt from the requirements of the Stow zoning by-law." The defendants have appealed from that decision.

General Laws c. 40A, § 3, as amended by St. 1982, c. 40, provides in pertinent part: "[N]or shall any [zoning] ordinance or by-law prohibit, unreasonably regulate or *require a special permit* for the use of land for *the primary purpose of agriculture*, horticulture, floriculture, or viticulture; nor prohibit or unreasonably regulate the expansion or reconstruction of existing structures thereon for the primary purpose of agriculture, horticulture, floriculture, or viticulture . . . except that all such activities may be limited to parcels of more than five acres in areas not zoned for agriculture, horticulture, floriculture, or viticulture" (emphasis supplied). The defendants argue that the operation carried out by the Steeges on the premises, which are located in a residential zone, is not agriculture, and is therefore subject to the zoning by-law.

The analysis used in *Building Inspector of Mansfield* v. *Curvin*, 22 Mass. App. Ct. 401 (1986), is also useful here. The term "agriculture" is not defined in the statute. " 'When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose. We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions.' " *Id.* at 402 (citations omitted). In that regard, Webster's Third New Intl. Dictionary (1971) at 44 defines "agriculture" as "the science or art of cultivating the soil, harvesting crops, and raising livestock." "Livestock," in turn, is defined as "animals of any kind kept or raised for use or pleasure." *Id.* at 1324.

"We look also to the use and definition of the word 'agriculture' in other legislation because '[s]ound principles of statutory construction dictate that interpretation of provisions having identical language be uniform.' " *Building Inspector of Mansfield* v. *Curvin*, 22 Mass. App. Ct. at 403, quoting from *Webster* v. *Board of Appeals of Reading*, 349 Mass. 17, 19 (1965). See *Commonwealth* v. *Baker*, 368 Mass. 58, 69 (1975). 2A Sands, Sutherland Statutory Construction § 51.02 (4th ed. 1984). General Laws c. 61A, § 1, inserted by St. 1973, c. 1118, § 1, which concerns the assessment and taxation of agricultural and horticultural land, states that "[l]and shall be deemed to be in agricultural use when primarily and directly used in *raising* animals, including, but not limited to, dairy cattle, beef cattle, poultry, sheep, swine, *horses*, ponies, mules, goats, bees and fur-bearing animals, for the purpose of selling such animals or a product derived from such animals in the regular course of business; or when primarily and directly used in a related manner which is incidental thereto and represents a customary and necessary use in raising such animals and preparing them or the products derived therefrom for market" (emphasis supplied). General Laws c. 61A, § 3, inserted by St. 1973, c. 1118, § 1, reads: "Land not less than five acres in area shall be deemed to be actively devoted to agricultural or

horticultural uses when the gross sales of agricultural, horticultural or agricultural and horticultural products resulting from such uses . . . total not less than five hundred dollars per year." Here, there was evidence, and the judge specifically found, that the annual $500 minimum for sales had been exceeded by the Steeges.

There was evidence that, as part of their farm operation, the Steeges purchased young horses, raised and then proceeded to sell them. The saleability of a particular horse depended on whether it could be ridden, particularly by young children. As part of their training, the horses would be ridden by students in order that they might become accustomed to handling by inexperienced riders. The Steeges had sold an average of ten horses a year in the past few years.

In view of the evidence and the expansive definitions of "agriculture" in the statutes, the judge ruled that "the plaintiffs' purchase and raising of horses, their stabling, training through the operation of the riding school, and their participation in horse shows are all part of the one whole and constitute agriculture as that phrase is used in c. 40A, § 3." There was no error. The judge's interpretation gives the word "agriculture" found in G. L. c. 40A, § 3, "its plain and ordinary meaning and its consistent and well-established . . . definition in other statutory contexts. . . ." *Building Inspector of Mansfield* v. *Curvin*, 22 Mass. App. Ct. at 404.

The other issues raised by the defendants are without merit.

*Judgment affirmed.*

*Paul Killeen* for the defendants.
*John P. Zelonis, Jr.,* for the plaintiffs.
*Catherine Clement*, Special Assistant Attorney General, for Department of Food and Agriculture, amicus curiae, submitted a brief.