TOWN OF STURBRIDGE *vs.* SANDRA J. B. McDOWELL. No. 92-P-681. November 19, 1993. *Zoning*, Agriculture. *Dog. Words*, "Agriculture."

The principal issue presented in this appeal is whether the breeding and raising of dogs for sale is an agricultural pursuit under G. L. c. 40A, § 3.[1]

The case was presented upon an agreed statement of facts to a Superior Court judge. We summarize them. The defendant owns an eighty-two acre tract of land in Sturbridge, which is located in a Rural Residential District [2] under the Sturbridge zoning by-law and on which she conducts a dog handling business. The defendant's business consists of breeding, raising, boarding, showing, and selling both her own and clients' dogs. All of these activities are conducted on the tract of land, except for the showing of dogs. Before beginning her business, the defendant obtained a kennel license from the town for ten dogs or less. The license expired on March

---

[1]General Laws c. 40A, § 3, as appearing in St. 1982, c. 40, provides in pertinent part: "[Nor] shall any [zoning] ordinance or by-law prohibit, unreasonably regulate or require a special permit for the use of land for the primary purpose of agriculture . . . ."

[2]While the judge did not so state in his findings, the parties agreed that a "[f]arm [,] including agriculture[,] . . . provided that the lot is not less than five [5] acres," is a permitted use in a Rural Residential District.

31, 1990, and the town refused to renew it. During the operation of her business, the defendant had housed as many as forty dogs in kennels maintained by her on the premises. During 1990, the defendant maintained an average of fifteen dogs on her property, nine of which she owns. After the defendant refused to comply with notices from the plaintiff's building inspector in 1990 that the use of her land for this purpose constituted a violation of the town's zoning by-law and that she cease operating her dog handling business on her tract, the town brought this action seeking injunctive relief and the award of fines for the enforcement of its zoning by-law.

The Superior Court judge determined that the town was wrong in demanding that the defendant cease all aspects of her dog handling business. He ruled that the breeding and raising of dogs owned by her for sale and activities incidental thereto such as the boarding of breeding stock and the grooming and training of the dogs held for sale were agricultural uses protected by G. L. c. 40A, § 3, but that the boarding, grooming, and training of dogs not owned by her or kept for breeding purposes were not agricultural uses and, therefore, were in violation of the town's zoning by-law. As a result, he ordered "that the defendant cease boarding, grooming or training dogs on her property except those owned, kept, or used by her for breeding purposes or for sale, or those dogs that she may lawfully keep as pets without obtaining a kennel license." From this judgment, the town appeals. We affirm.

Since the enactment of G. L. c. 40A, § 3, inserted by St. 1975, c. 808, § 3, we have given "agriculture" as used therein an expansive construction. See *Building Inspector of Mansfield* v. *Curvin*, 22 Mass. App. Ct. 401, 402-404 (1986) (the maintenance of a piggery deemed agricultural use under G. L. c. 40A, § 3); *Steege* v. *Board of Appeals of Stow*, 26 Mass. App. Ct. 970, 971-972 (1988)(the operation of a boarding stable for horses and a riding academy deemed an agricultural use protected by G. L. c. 40A, § 3). In doing so, we have relied upon both dictionary and statutory definitions of agriculture. *Curvin, supra* at 403-404. *Steege, supra* at 971-972. These definitions of agriculture embrace the raising of livestock. *Curvin, supra* at 403. *Steege, supra* at 971. Livestock, in turn, is defined as "[d]omestic animals, such as cattle or horses, raised for home use or for profit, especially on a farm." American Heritage Dictionary 1053 (1992). We are also cognizant that at the time G. L. c. 40A, § 3, was enacted, the Legislature was aware of the provisions of G. L. c. 61A, § 1, inserted by St. 1973, c. 1118, § 1, relating to the assessment and taxation of agricultural land, which provided that "[l]and shall be deemed to be in agricultural use when primarily and directly used in raising animals, including, but not limited to, dairy cattle, beef cattle, poultry, sheep, swine, horses, ponies, mules, goats, bees and fur-bearing animals, for the purpose of selling such animals . . . ; or when primarily and directly used in a related manner which is incidental thereto and represents a customary

and necessary use in raising such animals. . . ." While dogs are not specifically enumerated in the dictionary definition of livestock or in this statute, they are considered domestic animals, see *Commonwealth* v. *Proctor*, 355 Mass. 504, 505-506 (1969), and are raised "for home use or for profit." We fail to see how the raising and training of dogs for sale is distinguishable from the raising and training of other domestic animals such as ponies or horses which we concluded in *Steege* amounted to an agricultural pursuit. Consequently, we conclude that the breeding, raising, and training of dogs owned by the defendant on the land is an agricultural pursuit under G. L. c. 40A, § 3. We also agree with the judge that the boarding, grooming, and training of dogs not owned or kept as breeding stock by the defendant are not agricultural uses, because these activities are not an integral part of the breeding or raising of dogs. Cf. *Steege*, *supra* at 970, 972.

In doing so we are not unmindful that the Supreme Judicial Court has held that the maintenance of a dog kennel is not farming or agriculture, *Hume* v. *Building Inspector of Westford*, 355 Mass. 179, 182 (1969), and the maintenance of a greyhound raising stable is not a farm, *Mioduszewski* v. *Saugus*, 337 Mass. 140, 142-144 (1958). We do not think these cases controlling because they were decided before the enactment of G. L. c. 40A, § 3, and were limited to the construction of "farm" or "farming" as set forth in the local zoning by-law in question.

There is no merit in the plaintiff's other claims that the judge erred in failing to assess fines against the defendant for the proscribed activities and the judge should have granted it summary judgment. The Superior Court has no authority to assess fines in a civil action, *Burlington Sand & Gravel, Inc.* v. *Harvard*, 31 Mass. App. Ct. 261, 264 (1991), and no appeal lies from the denial of a motion for summary judgment after a trial on the merits. *Sullivan* v. *First Mass. Financial Corp.*, 409 Mass. 783, 790-791 (1991).

*Judgment affirmed.*

*Susanne R. Blatt*, Town Counsel, for the plaintiff.
*Edmond A. Neal, III*, for the defendant.