COMMONWEALTH vs. MATTHEW O'KEEFE.

No. 98-P-354.

Middlesex. December 7, 1998. - February 17, 2000.

Present: JACOBS, SMITH, & RAPOZA, JJ.

*Statute*, Construction. *Obscenity*, Dissemination of obscene matter to minor. *Words*, "Printed material."

This court concluded that handwritten letters do not constitute "printed material" for purposes of G. L. c. 272, § 31, and could not form a basis for a prosecution under G. L. c. 272, § 28, for disseminating "matter" harmful to a minor. [567-572]

COMPLAINT received and sworn to in the Malden Division of the District Court Department on November 8, 1996.

A question of law was reported by *Paul J. Cavanaugh*, J.

*John W. Parcellin* for the defendant.

*David W. Cunis*, Assistant District Attorney, for the Commonwealth.

RAPOZA, J. The defendant is alleged to have placed three sexually explicit notes inside a book in the classroom desk of a fifth grade student. The hand-lettered notes contained graphic sexual questions and offered the boy money to engage in various sexual acts. Four quarters were attached to one of the notes, and a dollar bill to another.

A complaint filed in the District Court charged the defendant with offering to engage in sexual conduct for a fee, G. L. c. 272, § 53A, and disseminating matter harmful to a minor, G. L. c. 272, § 28. Prior to trial, the District Court judge reported the following question to us pursuant to Mass.R.Crim.P. 34, 378 Mass. 905 (1979): "Whether nonprinted and nonmass produced letters constitute 'material' as defined by G. L. c. 272, § 31."

The reported question concerns the charge under G. L. c. 272, § 28, as appearing in St. 1982, c. 603, § 2, which prohibits the

dissemination of "matter" harmful to minors.[1] Section 31 of c. 272, as appearing in St. 1974, 430, § 12, defines "matter" for purposes of the obscenity statutes, §§ 28-30D,[2] as "any printed material, visual representation, live performance or sound recording including but not limited to, books, magazines, motion picture films, pamphlets, phonographic records, pictures, photographs, figures, statues, plays, dances."

The defendant contends that the word "printed" in the phrase "printed material" refers only to machine-produced documents, and that the handwritten notes at issue are not covered under the statute. The Commonwealth contends that the Legislature was more concerned with content than with the medium of expression in the obscenity statutes. Pointing to the extensive list of items defined as "matter" in § 31, it argues that "printed material" should be more broadly construed to include handwritten documents.

We begin mindful of the well-established proposition that criminal statutes "must 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited.' *Commonwealth* v. *Triplett*, [426 Mass.] 26, 29 (1997), quoting *Commonwealth* v. *Twitchell*, 416 Mass. 114, 123 (1993). Therefore, criminal statutes are strictly construed against the government." *Commonwealth* v. *Richards*, 426 Mass. 689, 690 (1998).

"Printed material" is not defined in § 31.[3] "In the absence of a statutory definition of ['printed material,'] we first look to [its] usual and accepted meaning. . . . We derive such meaning 'from sources presumably known to the statute's enactors, such as [the term's] use in other legal contexts and dictionary definitions.' " *Commonwealth* v. *Davie*, 46 Mass. App. Ct. 25, 28 (1998), quoting from *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977), and citing 2A Sutherland Statutory Construction § 46.04 (5th ed. 1992 & Supp. 1998).

Webster's Third New Intl. Dictionary 1803 (1993) provides

---

[1]The statute provides, in pertinent part: "Whoever disseminates to a minor any matter harmful to minors . . . shall be punished. . . ."

[2]The definitions appearing in § 31 govern §§ 28, 28C, 28D, 28E, 29, 29A, 29B, 30, and 30D of c. 272.

[3]We are aware of no appellate decision interpreting the meaning of "printed material" as it is used in § 31. See *Commonwealth* v. *Davie*, 46 Mass. App. Ct. 25, 28 & n.7 (1998), deriving the meaning of a statutory term from its dictionary definition and from its use in other legal contexts in similar circumstances.

two definitions of the verb "print" relevant to § 31: (1) "[T]o make a copy of by impressing paper against an inked printing surface or by an analogous method"; and (2) "[T]o form manually in unjoined characters resembling those of ordinary type." The first definition refers to mechanically produced material. The second refers to handwritten material, but is limited to writing that resembles mechanically printed type.

We conclude that the first definition of "print" is the correct one for purposes of § 31. We reject the second definition because it could potentially lead to a senseless result. If "print" were so construed, the statute would apply to documents hand lettered in unjoined characters, but not to documents written in a cursive hand. We do not adopt a statutory construction leading to an "absurd and unreasonable conclusion" where the statutory "language is fairly susceptible to a construction that would lead to a logical and sensible result." *McCarthy* v. *Woburn Hous. Authy.*, 341 Mass. 539, 542 (1960), quoting from *Bell* v. *Treasurer of Cambridge*, 310 Mass. 484, 489 (1941).

The Legislature's use of the term "print" in other sections of c. 272, as well as in other Massachusetts statutes, adheres to the lexical meaning we have adopted. Forms of the word "print" appear in several sections of c. 272. There they are distinguished from forms of the word "write"[4] by the term "or." See § 21 ("writes, prints, or causes to be written or printed"); § 92A ("written or painted or printed notice or sign"); § 98C ("written or printed material"). "The word 'or' is given a disjunctive meaning unless the context and the main purpose of all the words demand otherwise." *Commonwealth* v. *Davie*, 46 Mass. App. Ct. at 27, quoting from *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgmt. Bd.*, 421 Mass. 196, 212 (1995), and *Eastern Mass. St. Ry.* v. *Massachusetts Bay Transp. Authy.*, 350 Mass. 340, 343 (1966), and citing 1A Sutherland Statutory Construction § 21.14 (5th ed. 1992 & Supp. 1998).

Other Massachusetts statutes similarly distinguish hand-lettered "written" material from mechanically produced "printed" material. See, e.g., G. L. c. 233, § 79E ("memorandum, writing entry, print, representation or combination thereof"); c. 64H, § 1 ("written or printed matter"); c. 265, § 25 ("written or printed communication"); c. 271, § 39(*b*) ("written or printed

---

[4]The relevant definition of the verb "write" is "to form or trace (a character or series of characters) on paper or other suitable material with a pen or pencil." Webster's Third New Intl. Dictionary 2640 (1993).

communication"); c. 264, § 11 ("written or printed document").[5] "Sound principles of statutory construction dictate that interpretation of provisions having identical language be uniform." *Building Inspector of Mansfield* v. *Curvin*, 22 Mass. App. Ct. 401, 403 (1986), quoting from *Webster* v. *Board of Appeals of Reading*, 349 Mass. 17, 19 (1965), and authorities cited.[6]

The dictionary definition of "print," the distinction between printed and written material appearing in other legal contexts, and the admonition that we must interpret criminal statutes narrowly against the Commonwealth, all compel us to reject the Commonwealth's contention that we should construe "printed material" as encompassing handwritten documents for purposes of § 31.[7]

The Legislature has carefully considered the language used in the obscenity statutes. In 1974 it revised the statutory scheme extensively,[8] rewriting §§ 28 and 31 and inserting in the latter definitions of operative terms. Prior to 1974, the items covered by § 28 were listed serially. The list consisted of specific items, followed by a general term: "book, pamphlet, ballad, printed paper, phonographic record or other thing." When elements are listed in such a series, rules of statutory construction require the general phrase to be construed as restricted to elements similar

---

[5]Legislatures in other States distinguish handwritten from printed materials in their obscenity statutes. See, e.g., Ala. Code § 13A-12-200.1(15) (1994) ("printed or written matter"); Cal. Penal Code § 311 (b) (West 1999) ("printed or written material"); Iowa Code § 728.1(3) (1999) ("printed or written material"); Me. Rev. Stat. Ann. tit. 17, § 2911(1)(C) (West 1999) ("printed or written material"); Md. Ann. Code art. 27, § 417(1) (1996) ("printed or written material"); Or. Rev. Stat. § 167.065(1)(b) (1997) ("written or printed matter").

[6]The terms "print" and "write" are used disjunctively in case law as well. The distinction between the terms is important in contract law where "written" or "typewritten" material prevails over an inconsistent "printed" provision. See *Carrigg* v. *Cordeiro*, 26 Mass. App. Ct. 611, 616-617 (1988), and authorities cited.

[7]The Commonwealth argues that if we construe "printed material" as applying only to mechanically produced items, consistency requires us to construe the other kinds of material defined as "matter" in § 31 as also limited to mechanically produced material. We disagree. Section 31 lists four distinct categories of "matter" — "printed material, visual representation, live performance or sound recording." We see no reason to conclude that because "printed material" is limited to mechanically produced items, the other categories must also be so limited.

[8]Statute 1974, c. 430, §§ 1-13, effective June 28, 1974.

to the specific elements listed. See *Santos* v. *Bettencourt*, 40 Mass. App. Ct. 90, 92 (1996), and authorities cited; *Dickson* v. *Riverside Iron Works, Inc.*, 6 Mass. App. Ct. 53, 55-56 (1978), quoting from 2A Sands, Sutherland Statutory Construction § 47.17 (4th ed. 1973). This kind of listing can lead to difficulty in ascertaining the precise meaning of the general term. See *Santos* v. *Bettencourt, supra* at 92 (the court refrains from defining precisely the general term in such a series).[9]

When the Legislature rewrote §§ 28 and 31 in 1974[10] it redefined the covered items. They comprised four general categories of "matter." The category for documentary matter in § 31 — "printed material" — employed terms, e.g., "books, magazines, . . . pamphlets," whose meaning could be ascertained clearly. This definition remains current. The Legislature has frequently revised the language of the obscenity statutes both before and after 1974.[11] Its concern with the language of the statutory scheme indicates that when it defined the documentary category of "matter" as "printed material" it was aware of the meaning of the word "print" and of its use in other legal contexts. As the Supreme Judicial Court has noted, "The Legislature has shown that it knows how to specify a form of communication when it wishes to do so." *Commonwealth* v. *Richards*, 426 Mass. at 691 (holding that G. L. c. 269, § 14A, which prohibits the making of telephone calls for the sole purpose of harassing or annoying the recipient, does not extend to facsimile transmissions). The Legislature has, in fact, defined documentary material very broadly in G. L. c. 4, § 7, twenty-sixth (1998 ed.) (defining "public records" as "all

---

[9]In *Commonwealth* v. *Isenstadt*, 318 Mass. 543, 558 (1945), the Supreme Judicial Court stated that "[t]he State must have power to protect its citizens, and especially its youth, against obscenity in its various forms, including that which is written or printed. Statutes to this end have long existed." The court there appears to have assumed that the pre-1974 list of items in § 28 included both handwritten and machine printed documents.

[10]Section 28 was rewritten by St. 1974, c. 430, § 1; § 31, as we have noted, by St. 1974, c. 430, § 12.

[11]Some examples: "Phonographic record" was inserted in § 28 in 1943. St. 1943, c. 239. Section 28 was rewritten in 1945. St. 1945, c. 278, § 1. The phrase "harmful to minors" was inserted in § 28 in 1966. St. 1966, c. 418, § 1. The definition of "nudity" in § 31 was amended in 1977 and again in 1988. St. 1977, c. 917, § 5; St. 1988, c. 226, § 5. A definition of "visual material" was inserted in § 31 in 1977. St. 1977, c. 917, § 6. In 1988 definitions of "lascivious intent" and "performance" were inserted in § 31. St. 1988, c. 226, §§ 3, 6.

books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency . . . ").[12]

Limiting documents covered by the obscenity statutes to machine-printed material would be consistent with a legislative intent to focus on commercial disseminators. In 1977, the Supreme Judicial Court, discussing § 29,[13] which prohibits the dissemination or possession with intent to disseminate obscene matter, suggested that the Legislature may have had such an intent at that time. Referring to the statute's exemption of educational organizations from criminal penalties, the court noted that this leaves "criminal sanctions available for punishment of commercial disseminators of obscene materials." *Commonwealth* v. *Ferro*, 372 Mass. 379, 383 (1977).

Recent additions to the obscenity statutes have, however, criminalized behavior that is not necessarily commercial in nature. In 1997, the Legislature criminalized the possession of obscene visual depictions of children. G. L. c. 272, § 29C, inserted by St. 1997, c. 181, § 2. It explained that it was necessary to focus on possession in order to "stop the sexual abuse and exploitation of children" because prohibitions against producing and distributing the material had not been sufficiently effective. St. 1997, c. 181, § 1. See *Commonwealth* v. *Provost*, 418 Mass. 416, 417-419 (1994) (upholding the conviction, under § 29A, as amended by St. 1988, c. 226, § 1, of a man who photographed a nude boy for private sexual gratification).

It would be entirely consistent with the Legislature's intent to protect children from sexual exploitation and abuse to proscribe the activity alleged to have occurred in this case. However, the Legislature has not done so in § 28.[14] If the Legislature wishes

---

[12]Legislatures in other States have used broad terms to define the material covered in their obscenity statutes. See, e.g., Conn. Gen. Stat. Ann. § 53a-193(2) (1999) ("anything tangible"); N.Y. Penal Law § 235.00(2) (McKinney 2000) ("anything tangible").

[13]The court referred to G. L. c. 272, § 29, as appearing in St. 1974, c. 430, § 9.

[14]An additional question in this case — not raised in the report — is whether an individual's surreptitious placing of several notes inside a book in a child's school desk constitutes "dissemination," as defined in § 31. In view of our decision, we need not address this matter. We are aware of only one Massachusetts case analyzing the kind of activity that constitutes "dissemina-

to include handwritten material in the definition of "matter" under § 31, it is for the Legislature, not this court, to do so.

Our answer to the reported question is that handwritten letters do not constitute "printed material" for purposes of G. L. c. 272, § 31. The case is remanded to the District Court for further proceedings consistent with this decision.

*So ordered.*

---

tion." See *Commonwealth* v. *Lotten Books, Inc.,* 12 Mass. App. Ct. 625, 628 (1981) (holding that exhibiting "peep show" films constitutes dissemination).