Nickerson, J.
INTRODUCTION
The plaintiff, Eric J. Winer (Winer), moved this court to enter summary judgment in his favor on an appeal from a decision of the Town of Harwich Zoning Board of Appeals (the Board) upholding the Building Commissioner’s order to cease and desist the operation of a commercial business in a residential zone. The Board contends that the plaintiffs use of the land is primarily residential, but, if it is primarily agricultural, that the use is in part commercial and prohibited by the Town of Harwich Zoning By-laws (the By-laws). Particularly, they argue that if the use is agricultural, G.L.c. 40A, §3 allows the Town to prohibit commercial stables and riding rings on parcels of land less than five acres. For the reasons discussed below, the plaintiffs motion for summary judgment is denied and the decision of the Board is affirmed.
BACKGROUND
The material undisputed facts are as follows. The plaintiff, Winer, owns approximately 1.65 acres of property in Harwich zoned as “Residential — Low Density” (RL). Since the time the property was purchased by Winer in 2001, a single-family residence, three barns, two riding rings, and a fenced-in pasture have been located on the 73,200-square-foot lot. The plaintiff asserts that the bams, riding rings and pasture occupy roughly 55,950 square feet of the lot, while the residence sits on about 1,404 square feet. The By-laws stipulate that a lot must be at least 40,000 square feet to build a single-family residence in the RL zone.
Winer claims that, although no horses came with the former horse farm when he purchased it, he brought three horses with him when he moved in and soon after purchased three more. The plaintiff now operates a horse farm, Forest Gate Farm, licensed as a Riding School and Stable by the Massachusetts Department of Agriculture Resources. In addition to the horses on the properly, there are also a number of rabbits, chickens, turkeys, geese and ducks which the plaintiff buys, sells and trades. Equestrian activities that are conducted on the property include the raising, training, selling, riding and boarding of horses.
In response to complaints by abutters to Winer’s property, the Building Commissioner began looking into the plaintiffs use of his property. As a result, on or about June 14, 2003, Winer received a “Town of Harwich Non-Criminal Violation Notice” informing him that operation of a commercial business in a residential zone is a violation of the By-laws. After receiving a letter from Winer’s attorney, the Building Commissioner issued an order to “cease and desist all activities immediately” (“Exhibit A”). The Board of *230 Appeals held a public hearing on August 27, 2003 and, on September 24, 2003, voted unanimously (with one absentia) to uphold the order. As a result, this case was filed by Winer to annul that decision.
DISCUSSION
Summary Judgment is granted where there is “no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.” Kourouvacilis v. General Motor Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). Mass.R.Civ.P. 56(c). The moving party has the burden of affirmatively demonstrating both the absence of a triable issue and that he is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Once this burden is satisfied, the opposing party must establish the existence of a material factual dispute. Id. at 17. All inferences are drawn in the light most favorable to the party opposing the motion. Attorney General v. Bailey, 386 Mass. 367, 371 (1982) (citations omitted). Lastly, “summaryjudgment, when appropriate, may be rendered against the moving party.” Mass.R.Civ.R 56(c). Because the record reveals no disputed material facts, this case is proper for summary judgment.
There are three elements pertinent to summary judgment in this case. First, there are two requirements that the plaintiff must satisfy to qualify for the agricultural exception expressed in G.L.c. 40A, §3: the plaintiffs use of his land must be agricultural and that agricultural use must be the primary use of his property. The third dispositive issue is whether the Town can regulate lots less than five acres primarily used for agriculture in residentially zoned areas.
A. Plaintiffs Use of the Property as Agricultural
The first issue at hand is whether the plaintiff s use of his property is agricultural. According to the Bylaws, agricultural uses such as the “raising and keeping of livestock, horses and poultry, but not including the raising of swine for any purpose, nor fur-bearing animals for commercial use or sale,” are “allowed as of right” in RL zoning districts.[2] Massachusetts General Laws Chapter 40A, Section 3, provides in relevant part:
No zoning ordinance or by-law shall . . . prohibit, unreasonably regulate or require a special permit for the use of land for the primary purpose of agriculture, . . . nor prohibit, or unreasonably regulate, or require special permit for the use, expansion, or reconstruction of existing structures thereon for the primary purpose of agriculture . . . except that all activities may be limited to parcels of more than five acres in area not zoned for agriculture.
Plaintiff contends that his use of his property to board, train, and raise horses qualifies him for this agricultural exception. The Board argues that Winer’s commercial use of the property, namely, a commercial stable and riding ring, disqualifies him from this exception.
Because neither the By-Law nor G.L.c. 40A, §3 define “agriculture,” it is appropriate to look to the word’s “usual and accepted meanings from sources presumably known to the statute’s enactors” as well as to consult the use and definition of the word in other legislation. Steege v. Board of Appeals of Stow, 26 Mass.App.Ct. 970, 971 (1988), citing Building Inspector of Mansfield v. Curvin, 22 Mass.App.Ct. 401, 494 (1986). The plaintiff cites several other Massachusetts statutes in an attempt to define “agricultural”' as including the keeping of horses for commercial enterprises.[3] Additionally, Winer points to the ruling affirmed in Steege where the court stated, “the plaintiffs’ purchase and raising of horses, their stabling, training through the operation of the riding school, and their participation in horse shows are all part of the one whole and constitute agriculture as that phrase is used in c. 40A, §3.” Steege at 972. The plaintiff in this case claims to engage in the same activities as the plaintiff in Steege, including training horses and riders and raising horses to breed and sell their offspring.
The defendant differentiates this case by arguing that Winer’s property will be used predominantly for a commercial riding school, not raising or breeding horses. They therefore contend the plaintiffs use does not fit the definition of agricultural as articulated in Steege. This argument fails for several reasons. First, the purpose of G.L.c. 40, §3 is to promote agriculture.[4] The term “agriculture” as employed in §3 “is interpreted broadly in order to promote the economic viability of agricultural enterprises in Massachusetts.” Town of Natick v. Modern Continental Construction, 8 Mass. L. Rptr. 524, 526 (1998) (Middlesex Super.Ct.) (Botsford, J.). In addition, “the exemption operates even where the agricultural use in question is retail or commercial in nature” [emphasis added). Id., citing Prime v. Zoning Board of Appeals of Norwell, 42 Mass.App.Ct. 796, 800 (1997). Likewise, “all agriculture conducted for profit is commercial in some degree.” Prime at 800 quoting Cumberland Farms of Conn., Inc. v. Zoning Bd. of Appeal of N. Attleboro, 359 Mass. 68, 76 (1971). For the above reasons, the commercial nature of Winer’s horse-related activities does not bar the primary use of his lot from being agricultural.
In sum, bearing in mind the usual and accepted meaning of agriculture, along with other statutory definitions, and on top of the very specific interpretation of that term as applied to horses by the court in Steege, it is evident that “agriculture” includes any activity that is part and parcel of raising horses. Consequently, the operation of a riding school does not prevent Winer’s use of the property from being an “agricultural” use, as laid out in the agricultural exception of G.L.c. 40A, §3 and interpreted in Steege.[5]
*231 B. Plaintiffs Primaiy Use of the Property
The second requirement which must be met in order to qualify for the agricultural use exception is that the primary use of the property must be agricultural. The By-laws define “principal use” as “the main or primary purpose for which a structure or lot is designed, arranged or intended, or for which it may be used, occupied or maintained under this By-law.” Town of Harwich Zoning By-laws, September 1996 edition, page 43.
Winer asserts that, of the 73,200 square feet which comprise his lot, 55,950 square feet are used for barns, riding rings and fenced-in pasture; therefore, he argues, he is using his property primarily for horse-related agricultural purposes. The defendant responds, and the plaintiff admits, that the lot contains a single-family home which Winer uses as his residence and that the By-laws require a minimum lot size of40,000 square feet for a single-family residence in a RL zone. Thus, the defendant argues, Winer’s residential use of the property must comprise more then half of his lot in order to comply with the stipulation in the By-laws; consequently, there is not enough land left to assert a second primaiy use.[6] In response, the plaintiff contends that despite the minimum residential lot size requirement, he uses most of property for horse-related activities.
These conflicting views present an interesting question; that is, does the lot have to be both over 40,000 square feet and be primarily used for residential purposes, or can the residential use be secondaiy to another overlapping use? In Eastham v. Clancy, the court reaffirmed the ruling that the primaiy use of a lot was not agricultural where less then Vs of the lot was cleared for the growing of crops. Eastham v. Clancy, 44 Mass.App.Ct. 901, 902 (1997). In that case, because a minority of the land was put to agricultural use, it did not qualify for the exception laid out in G.L.c. 40A, §3. Two years later, the Massachusetts Land Court addressed this question in an opinion granting summary judgment for the plaintiffs, stating, “To say that locus is ‘a lot for single- and two-family residential use’ . . . does not mean it cannot also be used primarily for agricultural use.” Rockwood v. Town of Walpole, 7 LCR 257, 260 (1999) (Land Ct.; decision on cross motions for summary judgment). Moreover, in determining the primaiy use of that lot, the court refused to subtract the minimum lot size[7] required for the residential district from the total size of the lot. Id.
The logic of Rockwood is both persuasive and applicable to the case at hand. Winer appears to be employing a majority of his property for equestrian-related activities. The plaintiff claims that approximately 55,950 square feet of his 73,200-square-foot lot is used for bams, riding rings, and fenced-in pasture. This leaves 17,250 square feet for residential use; however, the home itself only occupies more or less 1,404 square feet. Applying the reasoning crafted in Rockwood, it is evident that Winer’s primaiy use of the property is agricultural.
C. The Town Zoning By-Law and General Laws c. 40A, §3
The final issue is whether the Town can regulate Winer’s agricultural, albeit partly commercial, use of his property because it is less than five acres. Section IV, subsection A, titled “Interpretation” of the By-laws states, “Whenever the regulations made under the authority hereof differ from those prescribed by statute, By-law or other regulation, that provision which imposes the greater restrictions or the higher standard shall govern.”[8] General Laws c. 40A, §3 stipulates that “all activities may be limited to parcels of more than five acres in area not zoned for agriculture.” The plaintiff interprets this five-acre exception as inapplicable because it is not specifically provided for in the Town’s By-laws. The defendant responds that it is immaterial that the By-law does not specifically articulate the five-acre exception and, furthermore, that the prohibition of “commercial stable, riding rings” in a RL district stated in the By-laws should be interpreted as consistent with their abiliiy to regulate lots less than five acres.
The case law does not appear to address this issue at length; in fact, most lots in the reported cases are at least five acres. Nonetheless, one example is found in Building Inspector of Mansfield v. Curvin, supra In that case, while discussing the purpose of G.L.c. 40A, §3, the court specifically stated, “Such use [agricultural] may not be prohibited or unduly restricted in an area not specifically zoned for the purpose as long as the parcel being used is one of more than five acres.” Building Inspector of Mansfield v. Curvin, 22 Mass.App.Ct. 401, 402-03 (1986). However, there is no mention as to whether Mansfield’s Town By-laws explicitly articulated the five-acre minimum.
Even where certain agricultural uses are allowed, the Town has some degree of interest, including nuisance control and public safety, in regulating certain activities on lots less than five acres located in residentially zoned areas. Moreover, even though this particular exception from the General Laws is not specified in the Town By-law, it is apparent that G.L.c. 40A, §3 governs. Accordingly, it appears from the limited case law and the legislation itself, in addition to the undisputed material facts of the case at hand, that the Town did have the ability to regulate and prohibit the use of a commercial stable and riding ring on a lot less than five acres despite the fact that commercial stables and riding rings are agricultural uses. The net result of this decision is that the plaintiff can continue agricultural uses in accordance with the Town of Harwich Zoning By-laws, but must discontinue his operation of a commercial stable and riding ring.
*232 ORDER
For the above stated reasons, it is ORDERED that the plaintiffs motion for summary judgment be DENIED. Pursuant to Rule 56(c) the court enters summary judgment for the defendant AFFIRMING the order of the Building Commissioner.

 Section V, subsection E, paragraph III, under ‘Table of Use Regulations.”

 Specifically, the plaintiff cites General Laws Chapter 128, §1A, defining agriculture as “the raising of livestock including horses, [and] . . . the keeping of horses as a commercial enterprise...” as well as General Laws Chapter 111, § 1 which also includes the raising of horses or keeping of horses as a commercial enterprise in its definition of agriculture.

 “The obvious purpose of the Act... is to promote agricultural use within all zoning districts in a municipality.” Building Inspector of Mansfield v. Curvin, 22 Mass.App.Ct. 401, 402 (1986).

 As alluded to in the defendant’s opposition, it would seem that because riding rings and stables constitute an agricultural use, and the feet that those activities are commercial is irrelevant, the Town’s exclusion of commercial stables and riding rings as applied to lots over five acres is inconsistent with G.L.c. 40A, §3 because it prohibits an agricultural use; however, this is not an issue to be resolved by this opinion.

 This appears to be consistent with the court’s holding in Bateman v. Board of Appeals of Georgetown where the court took into consideration the fact that the plaintiffs 36-acre lot greatly exceeded the 40,000 square feet necessary to build a single house when they allowed the owner to constmct a riding arena, barn and a home. Bateman v. Board of Appeals of Georgetown, 56 Mass.App.Ct 236, 242 (2002).

 A1so 40,000 square feet in that case.

 Town of Harwich Zoning By-laws, September 1996 edition, page 45.