Agnes, Peter W., J.

Background

The defendants have filed a motion to dismiss the complaint on grounds that it does not state a claim for relief. See Mass.RCiv.P. 12(b)(6). This requires the court to assume the truth of the allegations as set forth in plaintiffs complaint. The essential facts are as follows.
On April 18,2004, the plaintiff, Cynthia Duval, was legally upon the premises of the defendant for the purpose of caring for and riding her horse that she, for a fee, boarded at the premises. At that time, an aggressive horse owned by the defendants was permitted to enter an area in which the plaintiff was riding her horse. An altercation between the horses ensued, instigated by the aggressive horse, which caused the plaintiff to jump from her horse to safety, resulting in an upper tibia plateau fracture of her knee as well as other injuries and trauma. As a result of her injuries, the plaintiff incurred substantial costs and expenses for reasonable and necessary medical treatment and experienced significant pain and suffering.

Discussion

The defendants maintain that this action is barred by G.L.c. 128, §2D which restricts tort liability arising out of “equine activities.” Some of the relevant statutory definitions are as follows;
“Participant,” any person, whether amateur or professional who engages in an equine activity, whether or not a fee is paid to participate in such an activity.
“Inherent risks of equine activities,” dangers or conditions which are an integral part of equine activities including, but not limited to: 1) The propensity of equines to behave in ways that may result in injury, harm, or death to persons on or around them; 2) the unpredictability of an equine’s reaction to things such as sounds, sudden movement, and unfamiliar objects, persons or other animals; 3) certain hazards such as surface and subsurface *84 conditions; 4) collisions with other equines or objects; 5) the potential of a participant to act in a negligent manner that may contribute to injuiy to the participant or others, such as failing to maintain control over the animal or not acting within his ability.
“Equine activity sponsor,” an individual, group, club, partnership or corporation, whether or not the sponsor is operating for profit or nonprofit, which sponsors, organizes, or provides the facilities for, an equine activity . . .
G.L.c. 128, §2D(a). The statute itself provides in pertinent part:
Except as provided in subsection (c), an equine activity sponsor (or) an equine professional . . . shall not be liable for an injuiy to or the death of a participant resulting from the inherent risks of equine activities . . .
G.L.c. 128, §2D(b). However, the statute provides certain exceptions to the limitation on tort liability for conduct arising out of “equine activities.”
Nothing in subsection (b) shall prevent or limit the liability of an equine activity sponsor, an equine professional, or any other person if the equine activity sponsor . . .
(2) owns, leases, rents, has authorized use at or is otherwise in lawful possession and control of the land, or facilities upon which the participant sustained injuries because of a dangerous latent condition which was known to the equine activity sponsor, equine professional, or person . . .
(3) commits an act of omission that constitutes willful or wanton disregard for the safely of the participant and that act of omission caused the injuiy .. .
G.L.c. 128 §2D(c).
Plaintiffs opposition to defendants’ motion to dismiss is based on two arguments. First, she argues that G.L.c. 128, §2D does not apply to this case, and that her claim should instead be governed by general common-law standards of premises liability of properly owners as established by cases such as Mounsey v. Ellard, 363 Mass. 693 (1973). In Mounsey, supra, the Supreme Judicial Court altered the common-law doctrine of a landowner’s liability which had been made to turn on archaic distinctions between the status of the injured party in favor of an analysis of whether the landowner acted in a reasonable manner under the circumstances. “The problem of allocating the costs and risks of human injuiy is far too complex to be decided solely by the status of the entrant, especially where the status question often prevents the jury from ever determining the fundamental question whether the defendant has acted reasonably in light of all the circumstances in the particular case.” Id. at 707. Second, she argues that even if G.L.c. 128, §2D does apply, the defendants fall under an exception to limited liability as set forth in G.L.c. 128, §2D(c)(2).

I

Regarding plaintiffs first argument, involving whether the statute applies to these facts, the question is one of legislative intent. While the Supreme Judicial Court has modified the common law in a number of cases such as Mounsey v. Ellard, supra, to take into account the circumstances of modern life, that approach is not permitted where, as in this case, the Legislature has already made a public policy judgment about the extent to which a landowner should be exposed to liability in tort. Compare G.L.c. 143, §710 (regarding the conduct, responsibilities and duties of skiers and ski resorts). G.L.c. 128, §2D, represents a clear determination by the Massachusetts Legislature to restrict the liability of landowners engaged in equine activities just as forty-four other states have done. See Equine Activity Statutes: Part Four of an Update, CAUTION:HORSES (Am.Ass’n. for Horsemanship Safely, Fentress, Tex.) Vol. 5, No. 1 (Spring 2000).
G.L.c. 128, §2D was enacted in 1992 as an emergency measure designed to “immediately preserve equine agriculture in the commonwealth.” St. 1992, c. 212, §1. The court has previously given the term “agriculture,” “an expansive construction.” Town of Sturbridge v. McDowell, 35 Mass.App.Ct. 924, 925 (Mass.App.Ct. 1993) (holding that the breeding, raising, and training of dogs owned on the land is an agricultural pursuit under G.L.c. 40A, §3). See also Steege v. Board of Appeals of Stow, 26 Mass.App.Ct. 970, 971-72 (1988) (the operation of a boarding stable for horses and a riding academy deemed an agricultural use).
Other courts have reached the same result. In Konan v. George, 17 Mass. L. Rptr. 1, Worcester Sup.Ct. No. CV-0710B (Mass.Super.Ct. 2003), this court applied G.L.c. 128, §2D to a case involving similar facts when the plaintiff horse trainer was injured after being thrown by the defendant’s race horse. The court applied the statute because it fit the facts in that case and because the application was consistent with the Legislature’s concern about the dangers associated with horses in general and the problem of allowing these cases to be governed by ordinary principles of negligence. Id. The court went on to say that by adopting G.L.c. 128, §2D, the Legislature established that such dangers were understood to be widely known and especially obvious to experienced riders. Id. Similarly, in Fraumeni v. Aleppo Temple Shriners Activities, 6 Mass. L. Rep. 644, Middlesex Sup.Ct. No. 95-0204 (Mass.Super.Ct. 1997), this court suggested that the Legislature specifically sought to grant immuniiy to equine professionals regarding injuiy relating to the inherent risks of equine activities, because they recognized the unpredictable nature of horses, and wanted to protect those in the industiy (holding the defendant Temple wasn’t liable for the injuries sustained by the plaintiff rider after he was thrown by the defendant’s horse).
Considering the Legislature’s intent in creating the statute and its plain language, as well as the interpre *85 tive case law, this court concludes that the plaintiffs case falls squarely within G.L.c. 128, §2D, and not under general common-law principles of tort law.

II

With regard to plaintiffs second claim, the allegations set forth in the complaint are not sufficient to bring the case within any of the exceptions contained in G.L.c. 128, §2D(c)(2). At oral argument plaintiffs counsel explained that the “dangerous latent condition” that the plaintiff alleges caused her injuiy was a gate that had fallen into disrepair. The plaintiff asserts that because the gate was in such disrepair, an aggressive horse was able to enter the area that contained the plaintiff and her horse.
Even assuming that a gate, as a man-made structure, would be deemed to be “of the land,” the plaintiff did not allege that the injuiy she sustained was a result of such a “dangerous latent condition.” In the complaint, the plaintiff asserts that she was seriously injured due to the “negligence of the defendants in the maintenance of their premises.” See Plaintiffs Complaint, Paragraph 5. However, nowhere in the complaint is it alleged that the plaintiffs injuiy was caused by a “dangerous latent condition” of the land or facilities. Plaintiffs complaint alleges mere negligence, which is precisely what the Legislature regarded as insufficient.
Had the potentially stronger claim for a G.L.c. 128, §2D(c)(3) exception to limited liability been asserted, that perhaps would have been a horse of a different color. If an aggressive horse was free to wander into the area where the plaintiff was riding, there may have been an omission on the part of the defendants in failing to safely secure the aggressive horse. However, even if such a claim had been asserted, the plaintiff did not plead facts to support such a claim. Even viewing the facts in the light most favorable to the plaintiff, there is only an assertion of negligence on the part of the defendants. As section 2D(c)(3) indicates, a more substantial finding of “willful and wonton disregard for the safety of the participant” is required to overcome the immunity. G.L.c. 128, §2D(c)(3). “In pleadings as well as in statutes the rule is that ‘negligence and wilful and wanton conduct are so different that the words properly descriptive of the one exclude the other.’ ” Commonwealth v. Welansky, 316 Mass. 383, 400 (1944) (citations and quotations omitted). Thus, viewing the complaint in the light most favorable to the plaintiff, there are no applicable statutoiy exceptions into which the plaintiff is able to fit her claim.

Order

The defendants, as equine sponsors, do not fall within any of the specified exceptions to limited liability as set out in G.L.c. 128, §2D. For the foregoing reasons, the defendants, Melanie S. Howe’s and Patricia MacDonald’s motion to dismiss is ALLOWED.